UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALUMET SUPPLY, INC., | : |
| Plaintiff, | : |
| v. | : **MEMORANDUM & ORDER** |
| ALUMET MANUFACTURING, INC., | : Civil Action No: 02-5759 (JCL) |
| Defendant. | : |

**LIFLAND, District Judge**

Before the Court is the motion of Plaintiff Alumet Supply, Inc. ("ASI") for attorneys' fees and costs as the prevailing party under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117. For the reasons expressed below, ASI's motion is denied.

## BACKGROUND

In December 2002, ASI filed a declaratory judgment action seeking a declaration of noninfringement in response to Alumet Manufacturing Inc.'s ("AMI") demand that it cease using the "Alumet" mark. AMI counterclaimed for federal trademark infringement pursuant to Section 32 of the Lanham Act and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125 respectively. A claim for dilution under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c), was added shortly before trial. AMI sought to enjoin

ASI's use of the mark, but did not seek monetary damages.

On June 7, 2006, after a two-day bench trial, the Court granted ASI's motion for judgment as a matter of law against AMI, concluding that AMI had failed in all respects to offer any evidentiary support for its claims against ASI. ASI now seeks attorneys' fees in the amount of $147,322.80 and reimbursement of costs totaling $5,198 incurred during course of litigation.

## ANALYSIS

The Lanham Act permits "the court in exceptional cases [to] award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Third Circuit has held that an "exceptional case must involve culpable conduct on the part of the losing party." Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 280 (3d Cir. 2000) (citing Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991)). A finding of "bad faith, fraud, malice, or knowing infringement" must be made by the district court in order for a case to qualify as exceptional. Id. However, the Third Circuit has recognized that "culpable conduct comes in a variety of forms and may vary depending on the circumstances of a particular case." Id. Indeed, the Securacomm court concluded that culpability is not only based on infringing acts, but that in cases where the defendant is the prevailing party, "the plaintiff's culpable conduct will necessarily center on the act of filing the lawsuit rather than on the

infringement." Id. (holding language of statute and legislative history do not preclude using litigating conduct as a basis for a fee award).

The legislative history specifically explains:

> [The attorneys' fee provision] provides that attorney fees may be awarded to the prevailing party in actions under the federal trademark laws, *when equitable considerations justify such awards*. It would make a trademark owner's remedy complete in enforcing his mark against willful infringers, and would give defendants a remedy against unfounded suits.

S. Rep. No. 93-1400, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7137 (emphasis added). "By using the term 'equitable considerations,' [it is] clear that Congress intended to invoke the tradition of equity, a hallmark of which is the ability to assess the totality of the circumstances in each case." Securacomm, 224 F.3d at 281. Thus, vexatious or unjustified litigation or the filing of a frivolous lawsuit can form the basis for an award of fees under § 1117. See id. at 282-83.

Here, ASI argues that AMI's total lack of evidence to support its counterclaims of infringement, unfair competition and dilution, and its pursuit of these claims despite knowing that it lacked such evidence, establish ASI's right to an award of attorneys' fees. AMI did not start the lawsuit, but according to ASI, AMI brought unfounded counterclaims to frustrate and harass ASI in its effort to get a declaration

of its right to use the "Alumet Supply" service mark. To support this position, ASI points not only to the total lack of evidence of customer confusion, but also, more fundamentally, to the fact that AMI manufactured entirely different types of products, provided distinctly different goods and services to different customer bases and operated in geographically distinct areas and that ASI had co-existed with AMI for over five years without AMI's knowledge of it. Finally, ASI points to AMI's own admission that it did not consider ASI to be a competitor, to demonstrate that AMI's counterclaims were unfounded.

AMI responds that the actions undertaken to police its registered mark were not vexatious. Having successfully survived two summary judgment motions, AMI sought adjudication on the merits, as was its right. Unlike in Securacomm, AMI did not seek to "destroy a financially weaker adversary through oppressive litigation tactics." Id. at 277. Rather, AMI argues that both it and ASI engaged in "vigorous use of the legal process," id., to protect what each sought as a valuable asset – its fanciful trade name. According to AMI, its persistence in seeking adjudication of its claims does not constitute the sort of vexatiousness required in an "exceptional case" within the meaning of § 1117.

ASI brought the declaratory judgment action against AMI. AMI answered and counterclaimed as it was compelled to do. Fed. R. Civ. P. 13. In the context of "use

it or lose it," AMI had no option but to face ASI in litigation to protect its registered trade name. Thus, at least initially, AMI's compulsory counterclaims cannot be construed as vexatious, unjustified or frivolous.

In applying the summary judgment standard, the Court was constrained to only identify disputed factual issues by drawing all reasonable inferences in favor of the non-moving party, and was precluded from assessing the evidence as it relates to those disputed issues. Summary judgment was properly denied. The Court concluded that there were factual determinations not appropriately resolved at the summary judgment stage. In terms of the dilution claim, however, the Court expressed doubt as to its merits, stating:

> While the Court recognizes the strength of ASI's arguments as to the lack of fame of AMI's mark and the relatedness of the markets, it does not feel that there is such a clear-cut factual record as to say that a reasonable jury could not find that the cumulative effect of the facts in the record supports a dilution claim. The Court has grave doubt that AMI can establish that its mark is famous and the relatedness of the markets, such that it could prevail in a niche-market analysis.

Mem. & Order dated June 5, 2006.

At the bench trial, it became entirely clear to the Court, even without cross examination of AMI's sole witness, Larry Peterson, Vice President of AMI, that

5

AMI's evidence in support of its counterclaims was altogether lacking. For example, AMI relied on the following instances of alleged confusion to support its trademark and unfair competition claims:

- In January 2003, a long-time supplier of AMI attributed a response delay to AMI's President, because the supplier had phoned the wrong Alumet.

- AMI exhibited at the National Glass Association show in Atlanta, Georgia in March 2003. AMI encountered difficulties regarding a badge reader due to the fact that the company supplying the badge reader had placed the order in Alumet Supply's name and listed AMI's booth number.

- In September 2003, AMI received, in an envelope from ASI, a contract made between AMI and Metal Exchange Corporation for AMI's purchase of materials from Metal Exchange.

- Testimony by a manufacturer's representative concerning two or three occasions on which potential customers confused AMI with the New Jersey-based ASI.

At summary judgment, ASI challenged these examples as trivial instances of initial interest confusion, but the Court concluded that "the evidence presented by AMI of initial confusion by those knowledgeable in the trade is sufficient to create a fact issue." Mem. & Order of April 13, 2005 at 13-14. AMI should not be penalized for proceeding to trial after prevailing on two summary judgment motions.

However, after hearing Mr. Peterson's testimony at trial the Court determined that there was no evidence whatsoever of consumer confusion, not only because the instances above regarding trade shows and purchasing agreements did not relate to consumers (material suppliers and trade show personnel are not consumers), but also because AMI failed to propound any survey evidence or testimony of actual consumers confused by ASI, believing they were dealing with AMI. The Court concluded that "there is no evidence at all of customers of Alumet Manufacturing thinking that they are dealing with Alumet Manufacturing when they are in fact dealing with Alumet Supply." (Oral Opinion on Motion for Judgment as a Matter of Law, Tr. at 150.)

AMI's failure to prove consumer confusion was not the only legal insufficiency in the claims it brought. (See Tr. at 141-165.) AMI's dilution claim likewise suffered from a total lack of evidentiary support. ASI argues that proceeding ahead with the knowledge that there was no other evidence that could be used to establish consumer confusion, and therefore no reasonable expectation that AMI could succeed on its Lanham Act claims, raises a question as to AMI's good faith. IMAF, S.p.A. v. J. C. Penney Co., 810 F. Supp. 96, 100 (S.D.N.Y. 1992) (awarding attorneys' fees where defendant was "forced to incur expenses and devote time to defend against a lawsuit that continued for six years and utterly lacked a solid legal foundation," even though

plaintiff survived summary judgment motion). ASI's arguments have some force, but not enough to elevate AMI's conduct to the level of fraud, malice, bad faith, or similar culpable conduct. Securacomm, 224 F.3d at 280.

Congress granted district courts broad discretion in deciding whether to impose attorneys' fees under the Lanham Act. "In authorizing awards of attorneys' fees for successful [parties], the Lanham Act is intended to 'provide protection against unfounded suits brought by trademark owners for harassment and the like.'" Taj Mahal Enterprises Ltd. v. Trump, 745 F. Supp. 240, 253 (D.N.J. 1990) (quoting S. Rep. No. 93-1400, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 7132, 7136). Here, it is clear that AMI did not act culpably by counterclaiming for infringement, unfair competition and dilution. Although AMI lost at trial, the Court concludes that its claims were not brought with the intention of harassing ASI.

Based on the foregoing, the Court will not award attorneys' fees to ASI as the prevailing party.

Accordingly, **IT IS** on this 26th day of July 2006,

**ORDERED** that the motion for attorneys' fees of plaintiff Alumet Supply, Inc., is denied.

/s/ John C. Lifland, U.S.D.J.